# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD MCLEMORE, | ) | CASE NO. 4:23-cv-1144 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| COUNTY OF MAHONING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

While incarcerated at the Mahoning County Justice Center ("MCJC"), plaintiff Richard McLemore ("McLemore") claims that he received inadequate medical treatment and was subjected to lacking conditions of confinement. (Doc. No. 5 (Complaint), at 5.)[1] He brings constitutional claims under 42 U.S.C. § 1983 against the County of Mahoning (the "County"), Mahoning County Commissioners (the "Commissioners"), Mahoning County Sheriff Greene ("Greene"), along with MCJC employees Captain Kountz ("Kountz"), Captain Cappabianca ("Cappabianca"), Sergeant Graham ("Graham"), and Sergeant Wallace ("Wallace," and collectively the "County Defendants"). In addition, he sues MCJC's contract healthcare provider Wellpath, LLC ("Wellpath"), and its employees Nurse Renee Van Dyke ("Van Dyke") and Nurse Beth Rambo ("Rambo," and collectively with Van Dyke, the "Nurses").[2] (*Id.* at 1.)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

[2] In the amended complaint, McLemore also named Mahoning County Justice Center Operators and Policy Makers Jane and John Does, MCJC Warden, and MCJC Depety [sic] Medvet. (Doc. No. 5, at 1.) Those parties were never served.

While summary judgment motions were pending, Wellpath declared bankruptcy and this case was stayed. (Doc. No. 50 (Order).) Wellpath has now emerged from bankruptcy and the associated stay has been lifted. (Doc. No. 58 (Status Report).) For the reasons explained below, Wellpath's motion to dismiss (Doc. No. 57) is **GRANTED** and Nurses' motion for judgment on the pleadings (Doc. No. 59) is **GRANTED**. Wellpath and Nurses' motion for summary judgment (Doc. No. 44) is **DENIED as moot**. The County Defendant's motion for summary judgment (Doc. No. 43) is **GRANTED**. This case is **DISMISSED.**

## I. BACKGROUND[3]

From May 2023 to October 2023, McLemore was imprisoned at MCJC. (Doc. No. 46-1, at 1.) Defendants are various persons or entities associated with MCJC. The County is a government entity administered by the Commissioners.[4] Greene is the Mahoning County Sheriff. (Doc. No. 43-1 (Kountz Declaration), at 1.) Kountz, Graham, and Wallace are employees of the Mahoning County Sheriff's Office who worked at MCJC. (*Id.*; Doc. No. 42 (McLemore Deposition), at 61–62, 65.) Wellpath is a private entity responsible for providing medical services a MCJC. (Doc. No. 46, at 1.) VanDyke and Rambo are nurses employed by Wellpath. (*Id.*)

McLemore's claims concern the medical treatment he received while at MCJC, and the conditions of his confinement. (Doc. No. 5, at 3.)

---

[3] Because defendants' motions for summary judgment motion are unopposed, the Court's "reliance on the facts advanced by the movant is proper and sufficient." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (collecting cases); *Johnson v. Clark*, No. 1:23-cv-195, 2024 WL 970724, at *3 (N.D. Ohio Mar. 5, 2024) ("With no opposition or competing evidence, 'the facts presented and designated by the moving party were the facts at hand.'" (quoting *Guarino*, 980 F.2d at 404) (alterations omitted)).

[4] The parties provide little background information about the County or the Commissioners. Nonetheless, the Court may take judicial notice of information on government websites. *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) (collecting cases), and so relies on information from the County's website to understand the relevant factual background. *See Government, Mahoning County*, https://www.mahoningcountyoh.gov/27/Government (last visited Aug. 8, 2025).

### A. Medical Treatment

During his incarceration, McLemore suffered several medical ailments. (*Id.* at 3–10; *see* Doc. No. 46-3, at 4–45 (McLemore's jail medical records).) First, he alleges that the "1 inch (compressed 1/2" [inch]) mattress" in his cell provided insufficient padding and exacerbated his pre-existing back condition. (Doc. No. 5, at 4–7; Doc. No. 46-1, at 4–5, 61, 63, 64, 69–72.) At several points, McLemore asked for a second mattress (*see, e.g.*, Doc. No. 46-1, at 4–5), but various medical providers—including a few nurses and at least one doctor—determined that he did not qualify for one. (*Id.* at 68–71.) The providers offered other medical treatments, including pain medication, a stretching regimen, and extra blankets for "ortho posturing[.]" (Doc. No. 46-3, at 5, 10, 39; Doc. No. 46-1, at 28.) But without support from an additional mattress, McLemore claims that he experienced back, knee, hip, and shoulder pain, as well as numbness, a burning sensation, and sleep deprivation. (Doc. No. 46-1, at 61–72; *see also* Doc. No. 5, at 5.)

Second, McLemore "experience[d] an out break [sic] of enpatacgo[.]" (Doc. No. 46-1, at 60.) On June 12, 2023, a non-defendant noted that McLemore was suffering from a rash near his nostril and prescribed a one-week course of medication. (*Id.* at 60.) On June 16, McLemore transmitted another medical request, this time requesting medication because the "rash on [his] face [was] almost into [his] eyes." (*Id.* at 59.) On June 17, he was sent to the hospital. (*Id.* at 2, 58–59.) When he returned to MCJC he was prescribed another course of medication and returned to his cell. (*Id.* at 6, 54–57.) On June 23, he filed a medical request after "[s]ome how the antibiotic cream [he was] receiving got mixed up with a different kind[.]" (*Id.* at 57.) Medical staff "[n]oted" his request and stated that McLemore refused his "prescribed cream" the next day. (*Id.* at 57.) McLemore filed several more medical request forms concerning his condition (Doc. No 46-1, at 54–56), and each time medical staff responded to his requests. (*Id.*) McLemore claims that since

3

being released, he saw his personal doctor because he was concerned that his sense of smell and peripheral vision has been impacted by the infection on his nose. (Doc. No. 42, at 32–34.) Despite his doctor's recommendation, he never "followed through" with seeing a specialist but testified that the staph infection must have caused his lingering problems "because [he didn't have the] problem before" the infection. (Doc. No. 42, at 33–34.)

### B. Conditions of Confinement

McLemore also alleges his conditions of confinement were inadequate. He claims that during his time at MCJC he was denied "fruits and fish" and that the "jail population is denied 2 major food groups for a healthy and balanced diet according to the U.S Surgeon General[.]" (Doc. No. 5, at 10.) He further contends that "MCJC is over-crowded and under staffed [sic] for both the safety of inmates and staff[,]" which "leads to extended lockdowns of 15 hours a day in a bathroom sized cell with 2 people and a toilet that won't flush full of waste[.]" (*Id.* at 3.)

### C. Procedural History

After discovery, defendants moved for summary judgment. (Doc. Nos. 43 and 44.) Soon after, Wellpath filed for bankruptcy. (Doc. No. 48 (Status Report).) This case was stayed as a result. (Doc. No. 50.)

Wellpath has since emerged from bankruptcy. (Doc. No. 55.) During a telephonic conference with the Court and in a subsequent status report, the defendants represented that McLemore's claims against Wellpath were discharged as a result of the bankruptcy reorganization. (Doc. No. 58, at 1; Minutes of proceedings [non-document], filed 6/24/2025.) They also indicated that McLemore failed to opt-out of a release of his claims against the Nurses. (Doc. No. 58, at 1; Minutes of proceedings [non-document], filed 6/24/2025.) As a result, Wellpath filed a motion to

dismiss (Doc. No. 57) and Nurses filed a motion for judgment on the pleadings (Doc. No. 59). All defendants agree that this case can proceed as to the County Defendants. (Doc. No. 58, at 1.)

The Court then must consider two issues. First, whether the claims against Wellpath and the Nurses should be dismissed as a result of the bankruptcy. And second, whether the County Defendants should be granted summary judgment on McLemore's claims. The Court considers each issue in turn.

## II. MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADING

Wellpath filed a Rule 12(b) motion to dismiss (Doc. No. 57) and Nurses filed a Rule 12(c) motion for judgment on the pleadings requesting dismissal (Doc. No. 59). The governing standard of review for both motions is the same. *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 279 (6th Cir. 2009); *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001). As such, both motions will be discussed contemporaneously.

Both Wellpath and the Nurses move to dismiss based on two provisions in Wellpath's bankruptcy reorganization plan. (Doc. Nos. 57, 59.) First, the plan discharges claims against Wellpath and bars creditors from "continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests[.]" (Doc. No. 55-1, at 134.) Second, certain "releasing parties," including "an incarcerated individual that does not affirmatively elect to opt out[,]" are deemed to have "conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged . . . any and all claims, interests, damages, remedies, causes of action . . . based on or relating to, or in any manner arising from, in whole or in part . . . [Wellpath's] business operations[.]" (Doc. No. 55-1, at 82.)

Consistent with those provisions, McLemore's claims against Wellpath must be dismissed. A "bankruptcy court's order confirming a plan 'discharges the debtor from any debt that arose

5

before the date of such confirmation[.]'" *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 214–15, 144 S. Ct. 2071, 219 L. Ed. 2d 721 (2024) (quoting 11 U.S.C. § 1141(d)(1)(A)). Because that discharge "operates as an injunction . . . prohibiting creditors from attempting to collect or to recover a debt," McLemore cannot pursue his claim against Wellpath. *Id.* (cleaned up).

Nor can McLemore pursue his claims against the Nurses. To be sure, "a discharge operates only for the benefit of the debtor against its creditors and 'does not affect the liability of any other entity.'" *Id.* (citing 11 U.S.C. § 524(e)). But here the bankruptcy confirmation plan includes a release that extinguishes claims against non-debtors (like the Nurses) unless a creditor (like McLemore) opts out. (Doc. No. 55-1, at 77.) The defendants represent that McLemore has not opted out (*see* Doc. No. 55, at 3), and he does not suggest otherwise.[5]

As result of the Wellpath's bankruptcy reorganization plan, Wellpath's motion to dismiss (Doc. No. 57) and Nurses' motion for judgment on the pleadings (Doc. No. 59) are **GRANTED.** Their motion for summary judgment (Doc. No. 44) is **DENIED as moot**. McLemore's claims against Wellpath and the Nurses are **DISMISSED.**

---

[5] To be sure, *Harrington* raises some question about third-party releases. There, the Court held that a bankruptcy court could not approve a reorganization plan because it included a release and injunction that extinguished claimed against non-debtor third parties without the consent of the affected claimants. *Id.* at 209. But the Court noted that its holding should not be "construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan[.]" *Id.* at 226. In *Harrington's* wake there has been some debate in the bankruptcy courts about whether opt-out releases are consensual. *See, e.g.*, *In re Spirit Airlines, Inc.*, 668 B.R. 689, 700–03 (Bankr. S.D.N.Y. 2025); *In re GOL Linhas Aereas Inteligentes S.A.*, No. 24-10118, 2025 WL 1466055, at *22–24 (Bankr. S.D.N.Y. May 22, 2025); *In re Lavie Care Centers, LLC*, No. 24-55507, 2024 WL 4988600, at *11–16 (Bankr. N.D. Ga. Dec. 5, 2024). Even so, "[w]hether opt-outs are sufficient to manifest consent must be determined on a case-by-case basis." *GOL*, 2025 WL 1466055, at *24. McLemore has not argued that the opt-out in this case is legally insufficient. An even if he harbored doubts, his arguments would be properly addressed to the bankruptcy court. *See, e.g.*, *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002) (abrogated on other grounds by *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024); *In re United Producers, Inc.*, 353 B.R. 507, 508 (B.A.P. 6th Cir. 2006), *aff'd,* 526 F.3d 942 (6th Cir. 2008). McLemore has not made any arguments there either.

### III. MOTION FOR SUMMARY JUDGMENT

With the claims against Wellpath and the Nurses dismissed, all that remains are claims against the County Defendants, who have moved for summary judgment.

#### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought," and that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Alternatively, summary judgment is denied if "there are 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the record—including pleadings, depositions, written discovery responses, and affidavits—that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56(a), (c). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Anderson*, 477 U.S. at 248–49. It also insufficient for a plaintiff to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, the nonmoving party must "go beyond the pleadings" and

7

present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587–88. But the "mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence" that the nonmoving party is entitled to a verdict. *Id.*

### B. Discussion

Although McLemore invokes § 1983 in his initial complaint (Doc. No. 1, at 9), he does not ground his claims against the individual defendants in any specific federal constitutional provision. (*See generally* Doc. No. 5.) Without clarity from McLemore's complaint, defendants construe his claims against the individual defendants as arising under the Eight Amendment. (Doc. No. 43, at 7–11.) Against that backdrop, the County Defendants argue that none of McLemore's allegations amount to constitutional violations. (*Id.*)

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined[.]" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994) (citation and quotation marks omitted). Its protections extend to "the prison's conditions" or an "inmate's health problems[.]" *Phillips v. Tangilag*, 14 F.4th 524, 534

8

(6th Cir. 2021) (citations omitted). But, while the Eighth Amendment requires jail officials to "provide humane conditions of confinement[,]" including "adequate food, clothing, shelter, and medical care," it "'does not mandate comfortable prisons[.]'" *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Accordingly, only a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Wilson v. Williams*, 961 F.3d 829, 839–40 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 828).

That deliberate indifference standard has objective and subjective requirements. *Id.* An inmate must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Only "sufficiently serious" deprivations that "result in the denial of the minimal civilized measure of life's necessities" qualify. *Id.* (cleaned up). "Extreme deprivations are required" to satisfy the objective requirement "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (quoting *Rhodes*, 452 U.S. at 347); *Phillips*, 14 F.4th at 535.

"Only if a prisoner proves [the] objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Phillips*, 14 F. 4th at 535. At this step, the question is whether the defendant acted with a "sufficiently culpable mental state[.]" *Id.* A plaintiff must show that the "defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 568 (6th Cir. 2020) (citation and quotation marks omitted).

9

Measured against those standards, McLemore's proffered evidence does not support his constitutional claims. The Court addresses each claim in turn.

i. Medical Care

"In evaluating a deliberate indifference claim," the Court must ask whether "the complaint alleges a complete denial of medical care" or if "the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). McLemore does not claim complete denial of medical care. Indeed, the record is replete with evidence of treatment afforded to McLemore for his back condition and his infection. (*See, e.g.*, Doc. No. 46-3, at 5, 10, 39; Doc. No. 46-1, at 54–57.)

Instead, McLemore claims inadequate medical care. That distinction is important because when "a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments." *Alspaugh*, 643 F.3d at 169 (citation and quotation marks omitted). "[W]hen an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citation and quotation marks omitted). So, when "the plaintiff has received medical attention and seeks redress based on the inadequacy of the care"—as is the case here— "there must be medical proof that the provided treatment was not an adequate medical treatment of the inmate's condition or pain.'" *Griffith*, 975 F.3d at 567 (cleaned up); *Phillips*, 14 F.4th at 535 ("[C]ourts generally require [the plaintiff] to introduce medical evidence, typically in the form of expert testimony.").

10

Here, McLemore offers no such medical evidence or expert testimony. He merely declares that the County Defendant's actions were insufficient to remedy his medical needs. (Doc. No. 5, at 3-10.) The claims are backed only by McLemore's own beliefs. (*See, e.g.*, Doc. No. 42 at 31-32, 34, 71, 77, 81, 98.) He has placed no "verifying medical evidence in the record to establish the detrimental effect" of the purported inadequate treatment. *Rhinehart*, 894 F.3d at 738. Without "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain[,]" McLemore's claims fail. *Rhinehart*, 894 F.3d at 737 (citation and quotation marks omitted).

Consider an example: McLemore alleges that at one point "the doctor" determined that he should receive a second mattress, but MCJC "denied it" because McLemore did not meet certain criteria. (Doc. No. 5, at 6.) McLemore, however, never conducted discovery to gather evidence. He must offer actual medical evidence in support of claim to survive summary judgment. *See Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.").

To be sure, McLemore might think the treatment should have been different. But his mere "disagreement with the testing and treatment he [] received . . . does not rise to the level of an Eighth Amendment violation." *Rhinehart*, 894 F.3d at 740 (cleaned up). Nor does his "desire for additional or different treatment[.]" *Id.* (cleaned up). Without medical evidence to show that the medical care he received was inadequate, McLemore's medical claims fail.

      ii.      Conditions of Confinement

McLemore makes several allegations about the conditions of his confinement. He claims that he and other inmates were subject to "extended lockdowns" of "15 hours a day" because

11

MCJC is "over-crowded and understaffed" (Doc. No. 5 at 3.) McLemore also claims that MCJC did not offer him meals with "fruits or fish[.]" (*Id.* at 10.)

Though these conditions may have been unpleasant, that does not render them unconstitutional. Prison conditions can be "restrictive and even harsh[.]" *Rhodes v*, 452 U.S. at 347. The Eighth Amendment is only violated if a prison official acts with deliberately indifference in denying a prisoner "the minimal civilized measure of life's necessities[.]" *Farmer*, 511 U.S. at 834 (citations and quotation marks omitted); *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) ("A conditions of confinement claim . . . requires a finding of deliberate indifference[.]").

None of McLemore's allegations fit that bill. Prison overcrowding (standing alone) does not violate the Eighth Amendment. *See, e.g.*, *Rhodes*, 452 U.S. at 348. Nor do lengthy lockdowns. *See, e.g.*, *Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339, 345–46 (6th Cir. 2014) (finding "inconveniences" including "frequent lockdowns" to be "insufficient to support an Eighth Amendment claim'); *Quier v. Maury Cnty. Jail*, No. 1:14-cv-0153, 2015 WL 269932, at *2 (M.D. Tenn. Jan. 21, 2015) (collecting cases and finding no constitutional claim where plaintiff was locked down for 23 hours a day).

To be sure, McLemore contends that the overcrowding and short staffing led to more specific harms, namely being confined to a "bathroom sized cell with 2 people and a toilet that won't flush full of waste, for often hours." (Doc. No. 5, at 3.) While his allegations are not particularly well-developed, courts have consistently held that the double bunking of inmates and unsanitary cell conditions do not violate the constitution. *See, e.g.*, *White v. Mahoning Cnty. Just. Ctr.*, No. 4:23-cv-1962, 2024 WL 278110, at *3–4 (N.D. Ohio Jan. 25, 2024) (collecting cases and finding no constitutional violation where inmates were double bunked, deprived of working toilets, and exposed to unsanitary conditions); *Hestle v. Bauman*, No. 2:16-cv-196, 2016 WL 5745334, at

12

\*3 (W.D. Mich. Oct. 4, 2016) ("The Court concludes that the fact that Plaintiff's toilet did not flush properly for a period of just over 30 days is insufficient, by itself, to state a claim under the Eighth Amendment."), *aff'd,* No. 16-2620, 2017 WL 5591495 (6th Cir. Mar. 23, 2017).

Things may be different if the conditions of McLemore's confinement led to "deprivations of essential food, medical care, or sanitation[.]" *Rhodes,* 452 U.S. at 348. But that is not the case here. As explained above, while McLemore argues that medical treatment was often delayed, he has offered no evidence that those delays deprived him of essential medical services or caused any harm. *See, e.g.*, *White*, 2024 WL 278110, at \*4 (dismissing claim where plaintiff failed to "allege any actual injury he suffered as a result of the purported overcrowded/understaffed conditions."). And, while the U.S. Constitution guarantees prisoners food that meets their nutritional needs, it does not guarantee right to be served the specific foods they desire. *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015). McLemore offers nothing beyond conclusory assertions that food he was served—even without fish and fruit—did not meet his nutritional needs or cause medical issues. *See, e.g.*, *Sims v. Michigan Dep't of Corr.*, 23 F. App'x 214 (6th Cir. 2001); *Jackson v. Aramark*, No. 3:17-cv-P322, 2017 WL 3176284, at \*3 (W.D. Ky. July 26, 2017) (finding broad allegation that prison food was "not nutritionally adequate, no well-balanced meals" insufficient to support a constitutional claim); *Witschi v. N.C. Dep't of Pub. Safety*, No. 1:14-cv-68, 2014 WL 3735135, at \*2 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite the plaintiff's allegation that he was not being fed a sufficient diet because he did not allege facts suggesting that his health had deteriorated as a result of his diet regimen); *Dotson v. Calhoun Cnty. Sheriff's Dep't*, No. 1:07-cv-1037, 2008 WL 160622, at \*4 (W.D. Mich. Jan. 15, 2008) (adopting report and recommendation and finding no Eighth Amendment claim where plaintiff alleged he

was served insufficient amounts of meat, fruit, and vegetables but did not allege an insufficient amount of food or deterioration of health).

       iii.     *Monell* Claims

Under *Monell v. Dep't of Soc. Servs. of City of New York* local government entities can be sued for constitutional violations, subject to certain limitations. 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Here, although McLemore does not mention *Monell*, he sues the County, which is a local government entity. (Doc. No. 5, at 1.) Beyond that, it is not clear if he intended to bring any official capacity claims against County employees. Even if he did, those claims would be, in effect, against the County as well. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

All of those claims fail or the same reason. A local government entity (or a local government official sued in their official capacity) can be held liable under § 1983 in only "a narrow set of circumstances[.]" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). "A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, solely because it employs a tortfeasor." *Id.* (citation, quotation marks, and italics omitted). Instead, to survive summary judgment, a plaintiff must show that the municipality was the "moving force behind the injury alleged" because it had a "policy or custom" that led to a violation of plaintiff's rights. *Id.* (citations and quotation marks omitted). That said, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation omitted). As explained above, Malone has not offered

14

sufficient evidence to survive summary judgment as to any of his constitutional claims, so his claims against the County and any official capacity claims fail too.[6]

## IV. CONCLUSION

At bottom, "extreme deprivations are required to make out a conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). There is nothing in the record to suggest that the conditions of McLemore's confinement led to any serious deprivation of life's minimal necessities. Accordingly, the County Defendant's motion for summary judgment is **GRANTED**. As a result of Wellpath's bankruptcy reorganization plan, Wellpath's motion to dismiss is **GRANTED**, Nurses' motion for judgment on the pleadings is **GRANTED**, and Wellpath and Nurses' motion for summary judgment is **DENIED as moot**. This case is **DISMISSED.**

**IT IS SO ORDERED**.

Dated: December 9, 2025

　　　　　　　　　　　　　　　　　　　　／s／ Sara Lioi
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6] The County also argues that it is not *sui juris* under Ohio law and there incapable of being sued under § 1983. (Doc. No. 43, at 6 (citing Fed. R. Civ. P. 17(b)).) The County, however, overlooks a split in authority as to its application in the § 1983 context. Despite the general rule, the majority of courts to directly consider the question have concluded that an Ohio county is amendable to a § 1983 suit. *See, e.g.*, *Bruce v. City of Miamisburg*, 2021 WL 4480918, at *2 (S.D. Ohio Sept. 30, 2021) (recognizing an exception to the general rule that a county is not sui juris when a party brings a claim against a party in § 1983), *Stack v. Karnes*, 750 F. Supp. 2d 892 (S.D. Ohio 2010); *see also S.J. v. Hamilton Cnty., Ohio*, 37 F.3d 416, 420 (6th Cir. 2004) (affirming judgment on § 1983 claim against Ohio county).